No. 22-15080

---

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

SEAN MCGINITY, individually and on behalf of all others similarly situated,

*Plaintiff-Appellant,*

v.

THE PROCTER & GAMBLE COMPANY,

*Defendant-Appellee.*

---

On Appeal from the United States District Court
for the Northern District of California, Oakland Division
The Honorable Yvonne Gonzalez Rogers, District Judge
District Court No. 4:20-cv-08164-YGR

---

## REPLY BRIEF OF PLAINTIFF-APPELLANT SEAN MCGINITY

---

GEORGE V. GRANADE (316050)
**REESE LLP**
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (310) 393-0070
Facsimile: (212) 253-4272
Email: *ggranade@reesellp.com*

*Counsel for Plaintiff-Appellant Sean McGinity and the Proposed Class*
(Additional counsel listed on signature page)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .............................................................................. ii

INTRODUCTION ...........................................................................................1

ARGUMENT ................................................................................................. 2

I.  Plaintiff's Legal and Factual Contentions Have Been Consistent
    Throughout the Course of Two Pleadings and on Appeal.................... 2

II. The Amended Complaint Plausibly Alleges the "NatureFusion"
    Product Labeling Is Likely to Deceive a Reasonable Consumer .......... 6

    A.  The "NatureFusion" Representation Indicates to
        Reasonable Consumers That the Product Is Not
        Substantially Comprised of Artificial and Synthetic
        Ingredients.................................................................................. 8

    B.  The Court Should Not Decide as a Matter of Law That
        Reasonable Consumers Understand the Meaning of the
        Word "Nature," Viewed in the Context of the Product
        Labeling, to Be Materially Different from the Meaning of
        the Word "Natural".................................................................... 11

    C.  The District Court Failed to Comply with Well-
        Established Ninth Circuit Authority by Allowing
        Information on the Back Labels of the Products to Correct
        the Deceptive "Nature Fusion" Representation on the
        Front ..........................................................................................14

III. The Consumer Survey Bolsters Plaintiff's Allegations ........................16

IV.  P&G Does Not Address McGinity's Argument That the
     Amended Complaint Satisfies Federal Rule of Civil Procedure
     9(b) ...................................................................................................... 22

CONCLUSION ............................................................................................ 22

CERTIFICATE OF COMPLIANCE FOR BRIEFS (FORM 8) ....................... 24

# TABLE OF AUTHORITIES

## CASES

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ...........................................................................17, 20

*Becerra v. Dr Pepper/Seven Up, Inc.,*
    945 F.3d 1225 (9th Cir. 2019)......................................................... 2, 18, 19

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007).........................................................................17, 20

*Bell v. Publix Super Markets, Inc.,*
    982 F.3d 468 (7th Cir. 2020) ..................................................... 7, 13, 15, 17

*Cheslow v. Ghirardelli Chocolate Co.,*
    472 F. Supp. 3d 686 (N.D. Cal. 2020)...................................................21, 22

*Danone, US, LLC v. Chobani, LLC,*
    362 F. Supp. 3d 109 (S.D.N.Y. 2019).........................................................13

*Dumont v. Reily Foods Co.,*
    934 F.3d 35 (1st Cir. 2019) ...........................................................12, 13, 15

*Goldemberg v. Johnson & Johnson Consumer Cos.,*
    8 F. Supp. 3d 467 (S.D.N.Y. 2014).............................................................13

*Moore v. Mars Petcare US, Inc.,*
    966 F.3d 1007 (9th Cir. 2020)............................................................... 8, 14

*Paulino v. Conopco, Inc.,* No. 14-cv-05145-JG-RML,
    2015 WL 4895234 (E.D.N.Y. Aug. 17, 2015) .............................................13

*Reid v. Johnson & Johnson,*
    780 F.3d 952 (9th Cir. 2015) ..................................................................... 7

*Salazar v. Target Corp.,*
    83 Cal. App. 5th 571, 2022 WL 4298521 (2022).........................7, 12, 13, 15

*Tsan v. Seventh Generation, Inc.*, No. 15-CV-00205-JST,
    2015 WL 6694104 (N.D. Cal. Nov. 3, 2015) .............................................. 11

*Williams v. Gerber Prods. Co.*,
    552 F.3d 934 (9th Cir. 2008)..................................................... 8, 14, 21, 22

**O**THER **A**UTHORITIES

Federal Rule of Civil Procedure 8 .................................................................. 5

Federal Rule of Civil Procedure 9 ................................................................ 22

Federal Rule of Civil Procedure 12 ............................................... 2, 15, 16, 20

## INTRODUCTION

In his opening brief, Plaintiff[1] showed that his Amended Complaint plausibly alleges the term "NatureFusion" on the labels of the shampoo and conditioner Products at issue misleads reasonable consumers into believing the Products are not substantially comprised of synthetic and artificial ingredients, when in fact the Products are overflowing with such ingredients. To make this showing, in addition to relying upon the Product labeling itself, among other things, the Amended Complaint relies upon a survey of over 400 consumers that Plaintiff's counsel commissioned and that was conducted by an independent third party, which is attached as an exhibit to the pleading. As detailed in the opening brief, the survey includes numerous facts illuminating what consumers understand the "NatureFusion" representation to mean and how important the statement is to their decisions to buy the Products.

Plaintiff further showed the District Court erred when it dismissed his deceptive labeling claims under the UCL, FAL, and CLRA as a matter of law at the motion to dismiss stage. In short, the District Court elected not to believe Plaintiff's allegations and instead chose to construe them in the light

---

[1] Capitalized terms have the same definitions as in the opening brief. Br. of Pl.-Appellant McGinity, ECF No. 8 ("Pl.'s Br.").

most favorable to Defendant, rather than Plaintiff, thereby fundamentally misapplying Federal Rule of Civil Procedure 12(b)(6).

As discussed in detail below, in its answering brief, Defendant has not overcome Plaintiff's showing that the District Court erred. Instead, Defendant merely doubles down on the District Court's mistakes or asks the Court to follow additional incorrect propositions. For example, Defendant greatly over-reads *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225 (9th Cir. 2019), to mean that no consumer survey could ever render a deceptive labeling claim plausible, and it wrongly asserts Plaintiff's liability theory has changed over time. Defendant's arguments in favor of affirmance are without merit.

For all of the reasons below and in the opening brief, McGinity has properly alleged his claims under California consumer protection law; the Court should reject Defendant's arguments to the contrary; and the District Court's Order dismissing this action should be reversed.

## ARGUMENT

### I.  Plaintiff's Legal and Factual Contentions Have Been Consistent Throughout the Course of Two Pleadings and on Appeal

P&G accuses McGinity of "describ[ing] on appeal" claims that "are not the same as what he actually alleged in his amended complaint." Appellee

Procter & Gamble Co.'s Answering Br. 29, ECF No. 19 ("Def.'s Br."). Specifically, P&G contends "McGinity now claims on appeal that he alleged in his amended complaint that: (1) reasonable consumers understand the term 'Nature' to mean the products are not substantially composed of unnatural, synthetic ingredients; and (2) the 'NatureFusion' marketing is false and misleading because those products are in fact substantially comprised of non-natural, synthetic ingredients." *Id.* at 29-30 (citation omitted). According to P&G, the foregoing allegation "differs from the core allegation in his amended complaint that P&G marketed its products as all natural and completely free of synthetic ingredients." *Id.* at 30.

P&G is simply wrong. The plain language of both the original Complaint and the Amended Complaint belies P&G's "changed claims" theory. The Amended Complaint states in paragraph 17 precisely what P&G asserts is absent from the pleading, to wit: "The Products purchased by Plaintiff and the proposed Class *are deceptive and misleading because the Products* contain and *are substantially comprised of non-natural ingredients*." 2-ER-0016 ¶ 17. The original Complaint includes, word for word, the same allegation. 2-ER-0079 ¶ 17. The Amended Complaint makes the same point in paragraph 4, stating: "Defendant represents that the Products are natural, when, in fact, they contain non-

natural and synthetic ingredients, harsh and potentially harmful ingredients, and ***are substantially unnatural***." 2-ER-0013 ¶ 4 (emphasis added). And, again, the original Complaint in paragraph 4 includes the same sentence, word for word. 2-ER-0076 ¶ 4.

Furthermore, the original Complaint discusses, and the Amended Complaint attaches, survey results showing that a substantial majority of consumers (75% with respect to the shampoo and 77% with respect to the conditioner in the Amended Complaint and 77% in the original Complaint) believe, based on the front labeling, that the Products contain more natural ingredients than artificial ingredients. 2-ER-0044–45; 2-ER-0052–53; 2-ER-0076 ¶ 4. Indeed, the reason the pleadings discuss this point is that Plaintiff's contention was, and has always been, that the "NatureFusion" representation is deceptive because, contrary to what reasonable consumers understand "NatureFusion" to mean, the Products in fact "are substantially comprised of non-natural ingredients." 2-ER-0016 ¶ 17; 2-ER-0079 ¶ 17. The Court should reject P&G's attempt to shoehorn Plaintiff's allegations exclusively into P&G's desired liability theory.[2] *See, e.g.*, Def.'s Br. 17

---

[2] Plaintiff's case has never been that the "NatureFusion" representation is deceptive because the Products include a de minimis amount of artificial and synthetic ingredients. 2 ER-0016 ¶ 17; 2-ER-0079 ¶ 17. Contrary to an argument Defendant raises later in its brief, the question of whether such a claim would survive dismissal is not before the Court. *See* Def.'s Br. 49.

(arguing the "crux" of McGinity's claims is "the packaging leads consumers to believe that the products in question contain *no* artificial ingredients").

To the extent that the Amended Complaint also includes allegations indicating consumers understand "NatureFusion" to mean the Products *only* contain natural ingredients, *see* 2-ER-0013 ¶ 4 (alleging consumer survey "revealed that a near majority (49.1%) of consumers believe the phrase 'Nature Fusion' means the product contains ONLY natural ingredients"); 2-ER-0058–59, that is not problematic because Plaintiff is allowed to plead alternative theories and claims under Federal Rule of Civil Procedure 8(d)(2) and (3), regardless of consistency. FED. R. CIV. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."); FED. R. CIV. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."). Under Rule 8(d)(2) and (3), Plaintiff is allowed to claim consumers understand "NatureFusion" means (i) that the Product is free of artificial and synthetic ingredients, *see* 2-ER-0058–59, or (ii) in the alternative and at minimum, that the Product is not substantially comprised of artificial and synthetic ingredients, *see* 2-ER-0044–45; 2-ER-0052–53. And as discussed above, Plaintiff's

allegations have always included the latter point. *See* 2-ER-0013 ¶ 4; 2-ER-0016 ¶ 17; 2-ER-0044–45; 2-ER-0052–53; 2-ER-0076 ¶ 4; 2-ER-0079 ¶ 17.

Far from changing his legal or factual allegations, McGinity has consistently maintained through two pleadings and on this appeal that the Product labels are deceptive because despite the label's prominent, central "NatureFusion" claim, the Products are jam-packed with synthetic, artificial, and unnatural ingredients. *See* Pl.'s Br. 2; 2-ER-0013 ¶ 4; 2-ER-0016 ¶ 17; 2-ER-0044–45; 2-ER-0052–53; 2-ER-0076 ¶ 4; 2-ER-0079 ¶ 17. This Court should reject P&G's argument to the contrary.

## II. The Amended Complaint Plausibly Alleges the "NatureFusion" Product Labeling Is Likely to Deceive a Reasonable Consumer

McGinity's opening brief shows that when his allegations are accepted as true, construed in the light most favorable to him, and reasonable inferences are drawn therefrom, it is plain that he has sufficiently pled his claims that the "NatureFusion" representation is deceptive. Pl.'s Br. 23-24, 26-31. P&G's contentions otherwise are wrong.

As an initial matter, P&G downplays the rule that deceptiveness is usually a question of fact that is not appropriate for resolution on a motion to dismiss. Def.'s Br. 22-23, 25, 26-28, 28 n.12. California state and Ninth Circuit authority, however, hold that "whether a reasonable consumer is

likely to be deceived as a matter of law may be decided 'only in "rare situation[s]."'" *Salazar v. Target Corp.*, 83 Cal. App. 5th 571, 2022 WL 4298521, at *3 (2022) (quoting *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015)). Under that California precedent, "[t]his is because '[w]hat matters . . . is how consumers actually behave—how they perceive advertising and how they make decisions.'" *Id.* "These are matters of fact, subject to proof that can be tested at trial, even if as judges we might be tempted to debate and speculate further about them." *Id.* (quoting *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 481 (7th Cir. 2020)).

Contrary to P&G's suggestion in a footnote, Def.'s Br. 28 n.12, "[c]ases in which the defendant's challenged advertising was properly found not deceptive as a matter of law at the pleading stage" *are* those where "the plaintiffs' claims were 'so facially illogical, implausible, or fanciful that no reasonable consumer' would believe the plaintiffs' interpretation of the supposedly misleading advertising." *Salazar*, 2022 WL 4298521, at *6 (quoting *Bell*, 982 F.3d at 493 (Kanne, J., concurring)). "The California breakfast cereal cases are good examples of this, where courts dismissed claims that the colorful rings and balls of cereal shown on 'Froot Loops' and 'Cap'n Crunch' boxes promised real fruit within." *Id.* "The trial courts properly dismissed those claims as ' "nonsense" ' that was 'not to be taken

seriously.'" *Id.*

As Plaintiff set forth in the opening brief, "'[w]hether a practice is deceptive will usually be a question of fact not appropriate for decision on demurrer' or motions to dismiss." *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1017 (9th Cir. 2020) (quoting *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)).

### A. The "NatureFusion" Representation Indicates to Reasonable Consumers That the Product Is Not Substantially Comprised of Artificial and Synthetic Ingredients

P&G argues "NatureFusion" conveys the Products contain a mixture of ingredients because of the presence of the word "Fusion," Def.'s Br. 17, 24-25, 32, 39-41, 46, and it argues the Products do contain some natural ingredients, *id.* at 34, 40-41, 46. P&G further contends McGinity's survey shows 69% of consumers understand "NatureFusion" to mean the Products contain both natural and synthetic ingredients. *Id.* at 14-15, 18, 52-53. However, these points do not defeat McGinity's claims because he alleges more than just these points regarding what consumers understand "NatureFusion" to mean. According to the Amended Complaint and its attached independent survey, consumers do not only understand "NatureFusion" to mean the Products contain a mixture of ingredients. Instead, 49.1% of consumers understand "NatureFusion" to mean the

Product "contains ONLY natural ingredients." 2-ER-0013 ¶ 4; 2-ER-0058–59. And 75% of consumers with respect to the shampoo and 77% of consumers with respect to the conditioner understand "NatureFusion" to mean the Products contain more natural ingredients than artificial ingredients.[3] 2-ER-0044–45; 2-ER-0052–53. Thus, the fact that 69% of consumers understand "NatureFusion" to convey the Products are a mixture does not mean "NatureFusion" is not deceptive. The Amended Complaint alleges facts showing consumers understand "NatureFusion" to mean the Products are not substantially comprised of synthetic and artificial ingredients, 2-ER-0013 ¶ 4; 2-ER-0058–59; 2-ER-0044–45; 2-ER-0052–53, even though the truth is the Products "are substantially comprised of non-natural ingredients," 2-ER-0016 ¶ 17; *see also* 2-ER-0013 ¶ 4.

In a related argument, P&G contends that nothing about the word "NatureFusion" suggests the Products "do not include *any* artificial ingredients." Def.'s Br. 17; *see also id.* at 24. However, as discussed above, Plaintiff is not claiming only that "NatureFusion" means the Product

---

[3] P&G argues "no reasonable consumer would believe that the term represents anything about the relative proportion of natural to synthetic ingredients," Def.'s Br. 32, but Plaintiff's survey shows P&G is wrong. Substantial majorities of surveyed consumers believed "NatureFusion" means the Products contain more natural than synthetic ingredients. 2-ER-0044–45; 2-ER-0052–53.

contains no artificial or synthetic ingredients. *See supra* § I. Rather, McGinity also alleges consumers understand "NatureFusion" to mean the Products are not "substantially comprised of non-natural ingredients." *See* 2-ER-0016 ¶ 17; *see also* 2-ER-0013 ¶ 4. Furthermore, McGinity's allegations are backed up with factual support. The independent survey of more than 400 consumers that his counsel commissioned demonstrates that, contrary to P&G's argument, "NatureFusion" *does* suggest to 49.1% of consumers that the Products do not include any artificial ingredients. 2-ER-0013 ¶ 4; 2-ER-0058–59. And the survey shows that 75% of consumers viewing the shampoo label and 77% of consumers viewing the conditioner label understand the "NatureFusion" claim to mean the Products contain more natural ingredients than artificial ingredients. 2-ER-0044–45; 2-ER-0052–53. The Court should not ignore these non-conclusory facts drawn from the independent survey, which show that the presence of the word "Fusion" does not neutralize the overall deceptiveness of the "NatureFusion" representation.

Plaintiff's consumer survey shows P&G's contention that the Product labels make "no claim as to what ingredients are not included, or the amounts of certain ingredients included," in the Products, Def.'s Br. 33-34, is wrong, or, at minimum, raises fact questions not appropriate for resolution

at this stage of the case.[4] 2-ER-0044–45; 2-ER-0052–53.

**B. The Court Should Not Decide as a Matter of Law That Reasonable Consumers Understand the Meaning of the Word "Nature," Viewed in the Context of the Product Labeling, to Be Materially Different from the Meaning of the Word "Natural"**

Defendant contends the words "natural" and "all natural" do not appear on the Product labels, and, instead, the word "Nature," as part of the term "NatureFusion," is included. Def.'s Br. 32-33, 35-36. According to Defendant, "[n]either McGinity nor this Court can read into the label what P&G did not write." *Id.* at 35. Defendant goes on to argue that the cases Plaintiff cited in the opening brief on this issue concern the term "natural"

_____

[4] In a footnote, P&G argues the Products do not "purport to be certified as all natural, making McGinity's continued reliance on the Natural Products Association ('NPA') criteria for certification of products as 'natural' irrelevant." Def.'s Br. 33-34 n.15 (citation omitted). However, as McGinity set forth in the opening brief, the allegations regarding the NPA furnish factual support concerning what ingredients a reasonable consumer likely thinks are from "Nature." Pl.'s Br. 11. In a similar case that alleged the term "natural" was deceptive as used on cleaning supplies, paper products, and personal care products, a California federal court accepted that allegations regarding NPA standards provided factual support for the plaintiff's claims regarding the meaning of the word "natural" and the ingredients in the products, and it declined to strike them from the pleading. *Tsan v. Seventh Generation, Inc.*, No. 15-CV-00205-JST, 2015 WL 6694104, at *1, *8 (N.D. Cal. Nov. 3, 2015) (holding that NPA standards "provide information as to what the word 'natural' may mean to consumers as well as the ingredients that may be in Defendant's products" and that "[t]his information is clearly at least material to the question of how a reasonable consumer would interpret the word 'natural' on Defendant's product labels").

and not the term "nature." *Id.* at 36. And Defendant argues the terms at issue in the cases Plaintiff cited, such as "natural" and "naturals," are very different from the term "NatureFusion." *Id.* at 36-38. P&G concedes, however, that McGinity's case "resembles" *Dumont v. Reily Foods Co.*, 934 F.3d 35 (1st Cir. 2019), in which the First Circuit reversed the dismissal of the plaintiff's consumer protection claims. Def.'s Br. 37-38. As in *Dumont*, this Court should reverse the lower court's dismissal of Plaintiff's claims. *Dumont*, 934 F.3d at 41 ("[W]e think it best that six jurors, rather than three judges, decide on a full record whether the challenged label 'has the capacity to mislead' reasonably acting, hazelnut-loving consumers").

As Plaintiff set out in the opening brief, the Court should reject Defendant's arguments regarding the supposed differences between the terms "natural" and "nature" or "NatureFusion" because Defendant's argument relies on highly technical parsing of the words "nature" and "natural," which consumers in retail stores simply do not undertake in reality when quickly buying low-cost products. Pl.'s Br. 31-32; *see also Salazar*, 2022 WL 4298521, at *3 ("[W]hat matters . . . is how consumers actually behave—how they perceive advertising and how they make decisions."). No reasonable consumer in a retail store consults a dictionary or other interpretive aid to attempt to understand the precise meaning of the term

"NatureFusion" on the Product labeling. *See Bell*, 982 F.3d at 476; *Dumont*, 934 F.3d at 40; *Danone, US, LLC v. Chobani, LLC*, 362 F. Supp. 3d 109, 123 (S.D.N.Y. 2019). Instead, as Plaintiff's consumer survey demonstrates, consumers understand "NatureFusion" to mean the Products, just like products labeled "natural," are not substantially comprised of synthetic and artificial ingredients. *See* 2-ER-0013–14 ¶ 4; 2-ER-0016 ¶ 17; 2-ER-0019–20 ¶ 35; 2-ER-0040–59. Consequently, the numerous cases Plaintiff cited in the opening brief apply to his claims. Pl.'s Br. 30-31, 31 n.3; *see Paulino v. Conopco, Inc.*, No. 14-cv-05145-JG-RML, 2015 WL 4895234 (E.D.N.Y. Aug. 17, 2015); *Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467 (S.D.N.Y. 2014).

Moreover, as discussed above, how consumers actually behave, perceive advertising, and make decisions "are matters of fact, subject to proof that can be tested at trial, even if as judges we might be tempted to debate and speculate further about them." *Salazar*, 2022 WL 4298521, at *3 (quoting *Bell*, 982 F.3d at 481). The Court should reject Defendant's invitation to resolve the reasonable consumer inquiry as a matter of law in this case.

### C. The District Court Failed to Comply with Well-Established Ninth Circuit Authority by Allowing Information on the Back Labels of the Products to Correct the Deceptive "Nature Fusion" Representation on the Front

P&G admits it may not correct a deceptive representation on the front labeling by means of the ingredients list on the back. *See, e.g.*, Def.'s Br. 42. And McGinity does not dispute that "qualifiers in packaging, usually on the back of a label or in ingredient lists, 'can ameliorate any tendency of the label to mislead'" in cases where information on the back label confirms, rather than conflicts with, the representations on the front. *Moore*, 966 F.3d at 1017; *Williams*, 552 F.3d at 939–40.

The District Court, however, stated that it "[found] that plaintiff has not sufficiently alleged how a reasonable consumer would be deceived into believing that the products did not contain any synthetic ingredients ***given the express inclusion of such ingredients on the products packaging***." 1-ER-0007 (emphasis added). To the extent that the District Court held that the representations on the back of the packaging may correct representations on the front, it erred.

Furthermore, because the District Court erroneously found that the "NatureFusion" claim is not deceptive, it also erred when it stated that the ingredients list "confirms" the content of the front of the packaging. *See*

1-ER-0007.

In a footnote, P&G argues "McGinity's argument that the ingredient list does not specify which ingredients are natural and which are synthetic, thus making it hard for a consumer to distinguish between them is belied by the fact that McGinity himself listed out all of the synthetic ingredients in his amended complaint." Def.'s Br. 44 n.20 (citation omitted). This argument confuses the content of the Amended Complaint, which was signed and filed by counsel, with the experience of McGinity as a consumer buying the Product in a retail store. This argument is emblematic of P&G's mistaken approach to evaluating whether McGinity has stated a claim; P&G disregards the reality of how consumers perceive Product labels when quickly making retail purchases and, instead, invites the Court to dissect the label like a Judge might parse a statute, armed perhaps with several dictionaries. *See Salazar*, 2022 WL 4298521, at *4 (noting that "many grocery shoppers make quick decisions that do not involve careful consideration of all information available to them"); *see also Bell*, 982 F.3d at 476 ("The district court's dismissal erred by departing from the Rule 12(b)(6) standard and attributing to ordinary supermarket shoppers a mode of interpretation more familiar to judges trying to interpret statutes in the quiet of their chambers."); *Dumont*, 934 F.3d at 40 ("Our dissenting colleague envisions a more erudite reader of

labels, tipped off by the accent grave on the word 'crème,' and armed perhaps with several dictionaries, a bit like a federal judge reading a statute.").

## III. The Consumer Survey Bolsters Plaintiff's Allegations

The opening brief shows Plaintiff's consumer survey is brimming with facts that support the plausibility of Plaintiff's claims that the "NatureFusion" representation is likely to deceive reasonable consumers and is material to their purchases of the Products. Pl.'s Br. 6-10.

In response, Defendant first challenges whether a consumer survey alone can render a deceptive labeling claim plausible. Def.'s Br. 46-50. As an initial matter, Defendant's argument makes no difference here because Plaintiff is not relying solely on the consumer survey to establish his claim is plausible. Rather, as shown in the opening brief, the Product labeling itself and the allegations regarding which ingredients are synthetic and artificial, among other things, are also bases that support the plausibility of McGinity's claims. *See* Pl.'s Br. 5-6, 10-12; 2-ER-0015–16 ¶ 16; 2-ER-0017–18 ¶¶ 22–34.

Defendant is also wrong as a legal matter, however, that a consumer survey can never render a deceptive labeling claim plausible. Under the United States Supreme Court's decisions in *Twombly* and *Iqbal*, the plaintiff's pleading burden on a Rule 12(b)(6) motion is to allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on

its face,'" which occurs "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Governing Supreme Court authority does "not require heightened fact pleading of specifics, but only enough facts" to "nudge[] [the plaintiff's] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). If the facts set forth in a consumer survey, accepted as true, are enough to nudge deceptive labeling claims from conceivable to plausible, then the claims survive dismissal. *Id*. It would contradict *Twombly* and *Iqbal* to establish an across-the-board rule that no survey, no matter how strong, no matter how fact-intensive, and no matter the context, is ever sufficient on its own to support deceptive labeling claims under the UCL, FAL, and CLRA. This is especially so because survey evidence is an important tool for proving such claims at later stages of litigation. *See, e.g.*, *Morales v. Conopco, Inc.*, No. 2:13-2213 WBS EFB, 2016 WL 6094504, at *4 (E.D. Cal. Oct. 18, 2016); *Ries v. Arizona Beverages USA LLC*, No. 10-01139 RS, 2013 WL 1287416, at *6 (N.D. Cal. Mar. 28, 2013) ("[T]o prevail, plaintiff must demonstrate by extrinsic evidence, such as consumer survey evidence, that the challenged statements tend to mislead consumers."); *Haskell v. Time, Inc.*, 965 F. Supp. 1398, 1407 (E.D. Cal. 1997) (same).

P&G argues that "[t]o credit McGinity's argument that his consumer survey, commissioned by his attorneys, can defeat a motion to dismiss would mean the existence of any consumer study, no matter how weak, could transform an implausible claim into a plausible one." Def.'s Br. 46-47. That is not so. McGinity's survey is not a weak or conclusory survey; instead, it provides strong factual support for his claims. *See, e.g.*, Pl.'s Br. 6-10. A holding that Plaintiff's independent survey of more than 400 consumers, along with Plaintiff's other allegations regarding the Product labeling and ingredients, are sufficient to state a plausible deceptive labeling claim is not the same thing as a holding that any survey, regardless of its content or relationship to the other allegations in the pleading, is always sufficient to render a false advertising claim plausible.

P&G next contends that *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225 (9th Cir. 2019), holds that "a plaintiff cannot rely on consumer surveys alone to save an allegation that reasonable consumers are misled when the complaint does not otherwise plead facts establishing deception." Def.'s Br. 47. *Becerra*, however, is not so broad. In *Becerra*, after reviewing dictionary definitions of the term "diet," the court concluded that the common understanding of the term in context in a soft drink's brand name is that it is "understood as a relative claim about the calorie content of that soft drink

compared to the same brand's 'regular' (full-caloric) option," and not that it promises weight loss or management (as the plaintiff contended). *Becerra*, 945 F.3d at 1229. In support of the plaintiff's claim, her pleading "summarize[d] the results of a 2018 survey of 400 California soft-drink consumers and 400 nationwide soft-drink consumers," which she contended "confirm[ed] that the vast majority of consumers expect a diet soft drink to either help them lose weight, or help maintain or not affect their weight." *Id.* at 1230. However, while it was "difficult to tell what questions the survey asked to reach its conclusions," *id.* at 1230–31, the court was able to conclude that **the survey did not address** the dictionary-based understanding of the term "diet" that the court had previously established "or the equally reasonable understanding that consuming low-calorie products will impact one's weight only to the extent that weight loss relies on consuming fewer calories overall," *id.* at 1231. Consequently, the court held that "[a]t bottom, the survey does not shift the prevailing reasonable understanding of what reasonable consumers understand the word 'diet' to mean or make plausible the allegation that reasonable consumers are misled by the term 'diet.'" *Id.*

As the foregoing shows, the holding in *Becerra* is a country mile from a holding that no survey on its own can ever, under any circumstance, support the plausibility of a deceptive labeling claim under California's

consumer protection statutes. *Becerra* leaves wide open the possibility that a survey could directly address the precise factual question at issue and thereby furnish factual support that would nudge a claim across the line from conceivable to plausible. The Court should reject Defendant's arguments to the contrary.[5]

Defendant states, "[t]hat surveys are necessary to meeting a plaintiff's burden whether of pleading or of proof does not mean that any survey can satisfy those requirements." Def.'s Br. 50. But McGinity is not arguing that *any* survey would satisfy a plaintiff's pleading burden. Rather, Plaintiff contends that under *Twombly* and *Iqbal*, a survey—such as Plaintiff's survey here—that contains enough germane factual content to nudge the claims from conceivable to plausible is sufficient to satisfy Plaintiff's pleading burden on a Rule 12(b)(6) motion.

Defendant next takes the position that Plaintiff's survey does not aid his claims because it only includes images of the front labels, and not of the back labels, of the Products. Def.'s Br. 50-52. In support of its argument, P&G

---

[5] Defendant claims "McGinity contends that the use of the word 'NatureFusion' is deceptive if any amount of synthetic ingredients are included in the products." Def.'s Br. 49. That is not true. Plaintiff alleges the Products are "substantially comprised" of synthetic and artificial ingredients. 2-ER-0016 ¶ 17. As noted above, the question of whether the "NatureFusion" representation would be deceptive if the Products contained a de minimis amount of synthetic ingredients is not before this Court. *See supra* note 2.

relies upon *Cheslow v. Ghirardelli Chocolate Co.* (*see* Def.'s Br. 51-52), a case in which the court discounted the survey results at issue because the survey only included the front panel of the product, and not the ingredient list. *Cheslow v. Ghirardelli Chocolate Co.*, 472 F. Supp. 3d 686, 695 (N.D. Cal. 2020). The Court should reject P&G's argument and decline to follow *Cheslow* because under *Williams v. Gerber Products Co.*, the key initial question is whether the front panel of the product label is deceptive. *See Williams*, 552 F.3d at 939–40. As Defendant does not dispute, *see, e.g.*, Def.'s Br. 42, if the front panel of the product label is deceptive, the ingredient list on the back may not correct the misrepresentation, *Williams*, 552 F.3d at 939–40. Consequently, the first question to be resolved is whether the front panel is deceptive. If the answer is yes, there is no need to consider the ingredient list. *Id.* If the answer is no, then the ingredient list may confirm representations that are on the front of the packaging. *Id.*

Here, Plaintiff's survey addresses the critical initial inquiry: Does the "Nature Fusion" representation on the front labeling of the Product deceive reasonable consumers? *See* 2-ER-0013–14 ¶ 4; 2-ER-0019–20 ¶ 35; 2-ER-0040–59. Because the survey plausibly shows the "NatureFusion" representation on the front label is deceptive because the Product is substantially comprised of synthetic and artificial ingredients, the back label

may not be held to correct the deceptive representation on the front. *Williams*, 552 F.3d at 939–40. As a result, there was no need to show the surveyed consumers the back label. Insofar as *Cheslow* held otherwise, the Court should decline to follow it.

## IV.  P&G Does Not Address McGinity's Argument That the Amended Complaint Satisfies Federal Rule of Civil Procedure 9(b)

Plaintiff's opening brief shows the Amended Complaint satisfies all requirements of Federal Rule of Civil Procedure 9(b). Pl.'s Br. 37–41. Defendant does not address this argument in detail. Instead, it only states in a footnote that "McGinity's complaint fails whether or not Rule 9(b) applies." Def.'s Br. 9 n.4. This is a plausibility argument.

As set forth above, Plaintiff's claims are plausible. And for the reasons given in the opening brief, which P&G has not contested, the Amended Complaint meets the heightened pleading standard of Rule 9(b) as well. The Court should not hold that Rule 9(b) is a ground for affirmance.

## <u>CONCLUSION</u>

For the foregoing reasons and those set out in the opening brief, Plaintiff respectfully requests that this Court reverse the dismissal of his Amended Complaint and remand with instructions to deny Defendant's motion to dismiss.

DATE: October 21, 2022

Respectfully submitted,

**REESE LLP**

By: _/s/ George V. Granade_

GEORGE V. GRANADE (316050)
*ggranade@reesellp.com*
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (310) 393-0070
Facsimile: (212) 253-4272

**REESE LLP**

MICHAEL R. REESE (206773)
*mreese@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

*Counsel for Plaintiff Sean McGinity
and the Proposed Class*

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 22-15080

I am the attorney or self-represented party.

**This brief contains** | 4,958 | **words**, excluding the items exempted

by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R.

App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

⦿ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one):*

    ○ it is a joint brief submitted by separately represented parties;

    ○ a party or parties are filing a single brief in response to multiple briefs; or

    ○ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated [                ].

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | /s/ George V. Granade | **Date** | Oct 21, 2022

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8** | *Rev. 12/01/2018*